FILED
2012 Jul-03 PM 03:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **ANGELA DENISE WEBB,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2:11-CV-1172-VEH |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Angela Denise Webb ("Ms. Webb") brings this action pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.  She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner" or "Secretary"), who denied her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1]  Ms. Webb timely pursued and exhausted her administrative remedies available before the Commissioner.

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

The case is ripe for review pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act.[2]

## FACTUAL AND PROCEDURAL HISTORY

Ms. Webb was a 40-year-old female at the time of her hearing before the administrative law judge (hereinafter "ALJ"). (Tr. 31). The highest level of education she completed was the eighth grade. (Tr. 31, 193). Her past work experiences include employment as a folder, fast food cashier, and a cleaner/housekeeper. (Tr. 37-38). Ms. Webb claims she became disabled on September 1, 2008, due to migraines, back problems, high blood pressure, a nerve condition, and chronic pain. (Tr. 17, 99–100, 188). Her last period of employment ended on June 1, 2006, when she quit her job. (Tr. 188). Though she sought additional employment after that, she was not able to secure another job. (Tr. 45). Ms. Webb protectively filed concurrent applications for SSI and a period of DIB on January 9, 2009. (Tr. 145–54). Her claims were denied by the Regional Commissioner on April 8, 2009. (Tr. 101–10). Ms. Webb timely requested a hearing (Tr. 90–93), which was held on May 18, 2010, in Birmingham, Alabama. (Tr. 17, 111). The ALJ concluded that Ms. Webb was not disabled and issued his written decision denying her application for benefits on June 11, 2010. (Tr.

---

[2] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

17–21). The ALJ's decision denying benefits became the final decision of the Commissioner when the Appeals Council denied Ms. Webb's request for review on February 2, 2011. (Tr. 1–8).

Ms. Webb filed her Complaint on April 4, 2011, which asks this court to review the ALJ's decision. (Doc. 1). This court has carefully considered the record and affirms the decision of the ALJ.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). This court will determine that the ALJ's opinion is supported by substantial evidence if it finds "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo*,

because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

> (1)  whether the claimant is currently employed;
> (2)  whether the claimant has a severe impairment;
> (3)  whether the claimant's impairment meets or equals an impairment listed by the Secretary;
> (4)  whether the claimant can perform her past work; and
> (5)  whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to former applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps one and two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

## **FINDINGS OF THE ADMINISTRATIVE LAW JUDGE**

The ALJ found that Ms. Webb had not engaged in substantial gainful activity

from her alleged onset date of September 1, 2008. (Tr. 18). He also found that the medical evidence supported a finding that Ms. Webb's impairments of depression and morbid obesity were "severe" according to 20 C.F.R. § 404.1520(c) and 416.920(c). (Tr. 18). The ALJ then concluded that those medically determinable impairments, in combination, do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Social Security Regulations. (Tr. 18-19). The ALJ determined that Ms. Webb had the residual functioning capacity ("RFC") to perform "light work"[4] that allows for the following non-exertional limitations: can understand, remember, and complete simple tasks; concentration/memory for detailed tasks would be limited by cognitive/emotional factors; can maintain attention sufficiently to complete simple 1-to-2 step tasks for periods of at least two hours, without need for special supervision or extra work breaks; can maintain basic standards of personal hygiene and grooming; is able to complete an 8-hour work day, provided customary work breaks are provided; would function best with a flexible daily schedule in a well-spaced work setting; can tolerate casual, non-intense interaction with members of the general public and co-workers; supervision and criticism should be supportive and non-confrontational; changes in the work environment or expectations

---

[4] According to the Regulations, "light work" involves lifting no more than 20 pounds at a time and up to 10 pounds frequently. 20 C.F.R. § 416.967(b).

should be infrequent and introduced gradually; and can set ordinary work goals, but may need assistance with planning or complex goals. (Tr. 19). Given this RFC, and considering the testimony of the vocational expert, the ALJ concluded that Ms. Webb could perform her past relevant work as a cashier. (Tr. 20). Therefore, he concluded that Ms. Webb was not disabled. (*Id.*).

Accordingly, the ALJ determined that Ms. Webb was not eligible for DIB because she was not disabled under §§ 216(i) and 223(d) of the Social Security Act. Likewise, he found she was not eligible for SSI because she was not disabled under § 1614(a)(3)(A) of the Social Security Act. (Tr. 20–21).

## ANALYSIS

The court can reverse a finding of the Secretary if it is not supported by substantial evidence. 42 U.S.C. § 405(g). Ms. Webb asserts that the ALJ's decision was not supported by substantial evidence because the "the ALJ misinterpreted the opinion of his own consultative psychologist, Dr. Samuel A. Saxon." (Doc. 10 at 8). More specifically, she contends:

> It is not that the ALJ accorded minimal weight to Dr. Saxon. It is that the ALJ did not understand what Dr. Saxon said and in fact indicated that Dr. Saxon thought [Ms. Webb] was malingering. Dr. Saxon stated she was unreliable, but he did not at any time state that she was malingering and in fact indicated in the last paragraph that she would not even be capable of managing her financial benefits. [Ms. Webb] submits that the ALJ should have understood the difference between being histrionic and

7

>   malingering as these are not the same thing, and [Ms. Webb] submit[s] that the ALJ's substituting his own opinion for that of Dr. Saxon is reversible error.

(*Id.* at 8–9). The alleged misinterpretation of Dr. Saxon's opinion is the only specific example that Ms. Webb offers the court to demonstrate that the ALJ in this case failed in his duties to act impartially, fully consider the medical evidence, and to fairly develop the record. (*See id.* at 8–11). However, the court has reviewed the record, including the detailed opinion of Dr. Saxon (Tr. 282–85), and finds that the ALJ accurately interpreted and described Dr. Saxon's opinion. Specifically, as to the issue of "malingering," Dr. Saxon indeed used this word to describe his impression of Ms. Webb during his examination. He stated, "it is certainly felt that there was an element of not only exaggeration bur *perhaps even malingering* on this woman's part in spite of very genuine presentation of a very miserable human being." (Tr. 284) (emphasis added). Thus, the ALJ correctly opined that "[t]he repot of Dr. Saxon suggests **malingering** on the part of the claimant." (Tr. 20) (emphasis in original).

Moreover, reviewing the ALJ's opinion *in toto*, the court finds that the ALJ did not rely exclusively on Dr. Saxon's suggestion of malingering in reaching his determination concerning Ms. Webb's RFC and her ability to perform her past relevant work. The ALJ expressly relied on several other aspects of Ms. Webb's medical record in addition to Dr. Saxon's report, such as the vocational limitations reported by

Dr. Dale Leonard and the overall records of Ms. Webb's treating and examining physicians. (*See, e.g.,* Tr. 19 ("I find persuasive the vocational limitations as reported by Dr. Dale Leonard (Exhibit 2F, p3), and concluded that the claimant is capable of functioning pretty well at the present time."); *id.* at 20 ("No treating doctor has indicated that the claimant is disabled or in any way unable to perform work related activities. . . . Treatment records indicate that she is independent in activities of daily living and consistently cleared for work."). Further, in reaching his conclusion of not disabled, the ALJ expressly relied on the testimony of Ms. Webb herself and that of the vocational expert. (*See, e.g.,* Tr. 19 ("In reaching these conclusions, I point out that the claimant reported taking care of her children, not them her (Exhibit 7E)."); *id.* at 20 ("By [Ms. Webb's] own admission, she worked until she had a confrontation with her supervisor."); *id.* ("At the hearing I asked Dr. Green, the vocational expert, to identify work performed by the claimant in the past fifteen years, indicating the title of the job and the exertional and skill level of each job. . . . I then asked the doctor as to whether the above-described residual functional capacity would preclude the performance of any of the related jobs. Dr. Green testified that the [RFC] would not preclude the performance of work as a Cashier.").

    All of these observations by the ALJ point to substantial evidence supporting his determination that Ms. Webb is capable of performing her past relevant work and,

9

therefore, not disabled under the Social Security Act. Notably, Ms. Webb does not argue that the record is incomplete or missing any information that would be necessary for the ALJ to have rendered an informed decision on her applications; likewise, she does not contend that the ALJ should have obtained any additional medical records. Instead, Ms. Webb conclusorily argues that this case should be reversed based on the ALJ's "fail[ure] to properly consider any of the medical evidence in the administrative record," by "substitut[ing] his own judgment for that of a physician," and for failing in his "duty to fully and fairly develop the record." (Doc. 10 at 9–10).[5] To the extent that Ms. Webb's arguments on these issues are based on the ALJ's "misinterpretation" of Dr. Saxon's treatment notes, the arguments are flawed because the ALJ accurately described, and even directly quoted, the notes of Dr. Saxon, as explained *supra*. As such, the ALJ did not improperly substitute his own opinion for that of Dr. Saxon's, or of any other doctor in the medical record. After independently reviewing the record in this case, the court concludes that the ALJ properly considered the existing medical

---

[5] The court rejects the Commissioner's argument that Ms. Webb has waived her duty to develop the record argument because of her failure to elaborate. (Doc. 13 at 5–6). The parties to Social Security appeals are not even required to file briefs, which highlights the court's independent obligation on appeal to scrutinize the record below for error under a *de novo* review. *See Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (discussing the district court's independent "responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding").

evidence, which substantially supports his decision.[6]  Similarly, the court finds that the ALJ applied the proper legal standards, and met his duty to fully and fairly develop the record.  For these reasons, his decision is due to be affirmed.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the submissions of the parties, the court finds that the Commissioner's final decision is supported by substantial evidence and applies the proper legal standards.  Accordingly, the decision of the Commissioner will be affirmed by separate order.

**DONE** and **ORDERED** this the 3rd day of July, 2012.

*/s/ VEHopkins*
**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[6] Most significantly, the court observes that the comprehensive Mental Residual Functional Capacity Assessment of Dr. Leonard (Tr. 227–51) – which the ALJ relied on in determining Ms. Webb's RFC – is not challenged by Ms. Webb on this appeal.  In his assessment, Dr. Leonard concluded that Ms. Webb "appears to be able to complete an 8-hour workday," given certain limitations, which the ALJ fully adopted in his opinion and properly presented to the vocational expert.  (*See* Tr. 229).  Further, Dr. Leonard concluded that Ms. Webb was "not significantly limited" or only "moderately limited" in all categories of his vocational assessment.  (Tr. 227–28).  Finally, Dr. Leonard summarized Ms. Webb's medical records and, like Dr. Saxon, assessed that there was a possibility of "malingering" by Ms. Webb.  (Tr. 251) ("[Ms. Webb] . . . may have been malingering psychosis and mental slowness.").